# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

NOVUS FRANCHISING, INC.,

        Plaintiff,

v.

        **MEMORANDUM OF LAW & ORDER**
        Civil File No. 11-1651 (MJD/TNL)

JEFFREY L. LIVENGOOD and
BETTY A. LIVENGOOD, individually,
and d/b/a/ NOVUS Windshield Repair,

        Defendants.

Cynthia M. Klaus, James M. Susag, and Susan E. Tegt, Larkin Hoffman Daly & Lindgren Ltd., Counsel for Plaintiff.

J. Michael Dady and Kristy L. Zastrow, Dady & Gardner, PA, Counsel for Defendants.

## I.    INTRODUCTION

This matter is before the Court on Defendants' Motion to Dismiss.  [Docket No. 8]  The Court heard oral argument on November 18, 2011.  For the reasons that follow, the Court denies Defendants' motion.

## II.    BACKGROUND

### A.    Factual Background

1

### 1.    The Parties

Plaintiff Novus Franchising, Inc., ("Novus") owns a business system for operating mobile glass repair and replacement businesses that specialize in the repair and replacement of automotive glass, windshields, and related items. (Am. Compl. ¶ 10.)

On July 22, 1997, Novus and Defendants Jeffrey L. Livengood and Betty A. Livengood, residents of Kansas, entered into a Mobile Unit Franchise Agreement (the "1997 Franchise Agreement"), which authorized Defendants to offer and sell automotive glass repair products and services in the following northeastern Kansas counties: Clay, Dickinson, Geary, Marshall, Morris, Pottawatomie, Riley, and Wabaunsee (the "Area of Primary Responsibility" or "APR").  (Am. Compl. ¶¶ 2, 12-13.)  The 1997 Franchise Agreement was a renewal of an earlier franchise agreement between the parties.  (Am. Compl. ¶ 12; Am. Compl., Ex. A, 1997 Franchise Agreement.)

On February 1, 1998, Novus and the Livengoods entered into another Mobile Unit Franchise Agreement.  (Am. Compl. ¶ 14.)  This 1998 Franchise Agreement was replaced by the August 14, 2000 Mobile Unit Franchise Agreement ("2000 Franchise Agreement").  (Am. Compl. ¶¶ 15-16; Am. Compl., Ex. B, 2000 Franchise Agreement.)  The 2000 Franchise Agreement contained a

similar APR, with the addition of Cloud, Ottawa, Republic, and Washington counties.  (2000 Franchise Agreement ¶ 2.1.)  Upon execution of the 2000 Franchise Agreement, the 1998 Franchise Agreement was terminated and merged into the 2000 Franchise Agreement.  (Am. Compl. ¶ 15.)

Each Franchise Agreement had a ten-year term, with the 1997 Franchise Agreement expiring on July 21, 2007 and the 2000 Franchise Agreement expiring on August 13, 2010.  (Am. Compl. ¶¶ 3, 19, 27, 29; 1997 Franchise Agreement ¶ 3.1; 2000 Franchise Agreement ¶ 3.1.)  The Livengoods had a right to renew the Franchise Agreements, but did not do so.  (Am. Compl. ¶¶ 3, 19.)

## 2.      Contents of the Franchise Agreements

Under the Franchise Agreements, Defendants obtained use of the Novus name and trademarks, marketing and advertising services, training programs, and confidential and proprietary manuals.  (Am. Compl. ¶ 20.)  Defendants agreed to pay a monthly royalty to Novus, as set forth in Article 6 of the Franchise Agreements.  The royalty due was a percentage of gross revenues, subject to a minimum amount of $250 under 1997 Franchise Agreement and an amount that increased over time under the 2000 Franchise Agreement.  (Am. Compl. ¶ 21; 1997 Franchise Agreement, Art. 6; 2000 Franchise Agreement, Art.

6.)  The Livengoods granted Novus the right to audit their books and records to determine whether the royalties were properly calculated and paid.  (Am. Compl. ¶ 25; 1997 Franchise Agreement, Art. 14; 2000 Franchise Agreement, Art. 14.)

The 1997 and 2000 Franchise Agreements contain a Kansas choice-of-law provision.  (1997 Franchise Agreement ¶ 25.1; 2000 Franchise Agreement ¶ 26.1.)

### a)      Covenant Not to Compete

The 2000 Franchise Agreement contains the following covenant not to compete:

POST-TERM COVENANT NOT-TO-COMPETE.

The Franchisee, the Franchisee's shareholders and the Personal Guarantors will not, for a period of two (2) years after the termination or expiration of this Agreement or transfer of shares of capital stock by the Franchisee's shareholders, on their own account or as an employee, agent, consultant, partner, officer, director or shareholder of any other person, firm, entity, partnership or corporation: (a) seek to employ any person who is at that time employed by Novus or any Novus franchisee without the prior consent of the relevant employer; or (b) own, operate, lease, franchise, conduct, engage in, be connected with, have any interest in or assist any person or entity engaged in any or other related business located within the APR that is in any way competitive with or similar to the NOVUS® Business.  The Franchisee, the Franchisee's shareholders and the Personal Guarantors expressly agree that the time and geographical limitations set forth in this provision are reasonable and necessary to protect Novus and

4

> Novus' franchisees if this Agreement expires or is terminated by
> either party for any reason, and that this covenant not to compete is
> necessary to permit Novus the opportunity to resell and/or develop
> a new NOVUS® Business within the APR.

(2000 Franchise Agreement ¶ 21.3.)  The non-compete covered the Livengoods'

APR and lasted for two years after the expiration or termination of the Franchise

Agreement.

### b)      Pre-Lawsuit Negotiation Clause

The 2000 Franchise Agreements states: "Novus and the Franchisee will

attempt in good faith to resolve all disputes between them prior to commencing

any legal action to terminate this Agreement, for damages or for other relief."

(2000 Franchise Agreement ¶ 17.1.)  The dispute resolution clause also provides

for mediation, but not in the case of actions to recover past-due royalties or in

actions for injunctive relief.  (Id.)

### 3.      The Dispute Between the Parties

Novus claims that, throughout the term of the Franchise Agreements, the

Livengoods failed to pay required fees and royalties, underreported revenues,

and failed to submit accurate financial information to Novus.  (Am. Compl. ¶

26.)  Novus asserts that, although it has been unable to audit Defendants'

records, it calculates a royalty underpayment of $9,884.94 through the expiration of the 2000 Franchise Agreement, plus an additional $9,746.09 in royalties owed for the period they have continued to operate after the expiration of the 2000 Franchise Agreement through July 2011.  (Beveridge Decl. ¶¶ 2-3.)

Novus claims that it was in close contact with the Livengoods regarding the expiration of the Franchise Agreements.  (Beveridge Decl. ¶ 6.)  It spoke with Defendants in 2008, after the 1997 Franchise Agreement had expired, regarding their continued operation under the 2000 Franchise Agreement.  (Id.)  It spoke to them regarding renewal options and post-termination obligations before the expiration of the 2000 Franchise Agreement.  (Id.)

The Livengoods did not renew and the 2000 Franchise Agreement expired on August 13, 2010.  Novus claims that it spoke with the Livengoods several times between September 2010 and December 2010 regarding the potential of renewal of the franchise and their post-termination obligations.  (Beveridge Decl. ¶ 7.)

On November 9, 2010, Novus sent a Notice of Expiration Letter to the Livengoods, which reiterated their post-expiration obligations, including the

covenant not to compete.  (Am. Compl. ¶ 31; Beveridge Decl., Ex. B.)  The

Livengoods did not respond.  (Beveridge Decl. ¶ 8.)

In the spring of 2011, Novus hired a private investigator to investigate the

Livengoods.  (Andersen Decl. ¶ 2.)  In April 2011, the investigator reported that

the Livengoods were still operating an automotive glass repair and replacement

business within the APR, in violation of the 2000 Franchise Agreement.  (Id.)

Novus Vice President of Sales and Development, Ted Andersen, avers that, in

May 2011, he twice called the Livengoods to attempt to resolve the matter before

filing suit.  (Id.)  Both times, Andersen left a message stating that he was from

Novus and requesting a return call.  (Id.)  Andersen avers that the Livengoods

did not respond.  (Id.)

Jeffrey Livengood avers that he received a voicemail from Anderson in

April 2011 asking the Livengoods to call him.  (J. Livengood Decl. ¶ 4.)  Jeffrey

Livengood further avers that he left Andersen a message, telling him to call him

back at the Livengoods' office, but they never heard from him or anyone else at

Novus again.  (Id. ¶¶ 4-5.)

Novus claims that the Livengoods' improper competition has caused and

continues to cause irreparable harm to Novus by harming its goodwill, taking its

customers, making it difficult to refranchise in the territory, and harming the

franchise system as a whole.  (Beveridge Decl. ¶ 9.)

**B.      Procedural History**

On June 24, 2011, Novus filed a Complaint against Betty and Jeffrey

Livengood in this Court.

On July 15, 2011, the Livengoods' counsel sent a letter to Novus requesting

that Novus dismiss this action without prejudice and engage in direct

negotiations to resolve this dispute.  (Dady Aff., Ex. A.)  Novus refused.  (Dady

Aff. ¶ 4.)

On July 22, 2011, Novus filed an Amended Complaint alleging: Count

One: Breach of the Franchise Agreement (Violation of Post-Term Covenant Not

to Compete); Count Two: Breach of Franchise Agreement (Violation of Post-

Termination Obligations); Count Three: Breach of Franchise Agreements

(Violation of Franchisee's Obligations); Count Four: Breach of Personal

Guaranties; Count Five: Demand for an Audit; and Count Six: Claim for

Attorneys' Fees and Costs.  Novus's claims are based on its allegations that the

Livengoods have continued to operate a business in competition with Novus in

the APR during the two-year non-compete period, have not paid Novus all

8

amounts owing under the Franchise Agreement, and have not submitted accurate financial information to Novus.  In its prayer for relief, Novus requests an award of damages, preliminary and permanent injunctive relief, an audit of Defendants' records, costs and attorneys' fees, and prejudgment interest.

Defendants now move to dismiss the entire Amended Complaint, without prejudice, on the grounds that Novus has failed to comply with the alternative dispute resolution requirements of the 2000 Franchise Agreement or because this Court lacks subject matter jurisdiction.  Alternatively, Defendants request that the Court dismiss Counts One, Two, and Four with prejudice for failure to state a claim.

## III.    DISCUSSION

### A.    Alternative Dispute Resolution

The Livengoods argue that, under the 2000 Franchise Agreement, Novus was required to engage in good faith negotiations to resolve its dispute with them before it filed this lawsuit.  They claim that it refused to do so.  They request that the Court dismiss this action without prejudice and order Novus to not re-file the motion unless the parties have engaged in substantive negotiations, with counsel present, to resolve the dispute.

There is a genuine question of material fact regarding whether Novus, in good faith, attempted to resolve this dispute before filing this lawsuit.  According to Andersen, he twice left messages with the Livengoods in May 2011 and they never called him back.  Novus then filed suit in June 2011.  On the other hand, the Livengoods claim that it was Novus that failed to call them back.  Resolution of this issue is inappropriate on a motion to dismiss.

**B.      Diversity Jurisdiction**

**1.      Legal Standard**

Defendants assert that this case should be dismissed for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  "A plaintiff has the burden of establishing subject matter jurisdiction . . . ."  Jones v. Gale, 470 F.3d 1261, 1265 (8th Cir. 2006) (citations omitted).

> In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments.  In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction.

Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993) (citations omitted).  "In a factual attack, the court considers matters outside the pleadings, and the non-moving

party does not have the benefit of 12(b)(6) safeguards."  Osborn v. United States,

918 F.2d 724, 729 n.6 (8th Cir. 1990) (citations omitted).

Plaintiff claims that the Court has subject matter jurisdiction based on

diversity.  See 28 U.S.C. § 1332(a) (providing federal subject matter jurisdiction if

the parties are citizens of different states and "the matter in controversy exceeds

the sum or value of $75,000, exclusive of interest and costs").  Defendants

concede that diversity of citizenship exists, but mount a factual challenge to

Novus's claim that the amount in controversy exceeds $75,000.

"A complaint will be dismissed for lack of subject matter jurisdiction if it

appears to a legal certainty that the value of the claim is less than the required

amount of $75,000."  Advance Am. Servicing of Ark., Inc. v. McGinnis, 526 F.3d

1170, 1173 (8th Cir. 2008) (citation omitted).

> [A] complaint that alleges the jurisdictional amount in good faith
> will suffice to confer jurisdiction, but the complaint will be
> dismissed if it appear[s] to a legal certainty that the claim is really
> for less than the jurisdictional amount.  If the defendant challenges
> the plaintiff's allegations of the amount in controversy, then the
> plaintiff must establish jurisdiction by a preponderance of the
> evidence.

Scottsdale Ins. Co. v. Universal Crop Protection Alliance, LLC, 620 F.3d 926, 931

(8th Cir. 2010) (citations omitted).

> [T]he relevant legal rule is that the proponent of diversity
> jurisdiction must prove a negative by a preponderance of the
> evidence in order to avoid dismissal of his or her case.  A leading
> treatise, for example, suggests that the proponent of federal
> jurisdiction must show 'that it does not appear to a legal certainty
> that the claim for relief is for less than the statutorily prescribed
> jurisdictional amount.'

Id. (citations omitted). "[A]n amount that a plaintiff claims is not 'in controversy' if no fact finder could legally award it." Kopp v. Kopp, 280 F.3d 883, 885 (8th Cir. 2002).

Here, the Court concludes that it has diversity jurisdiction.

### 2.     Discussion

#### a)     Injunction

In its Amended Complaint, Novus seeks various injunctive relief, including "injunctive relief prohibiting any and all conduct by Defendants in violation of the non-competition covenants contained in the 2000 Franchise Agreement" (Am. Compl. ¶ 38); "injunctive relief and specific performance by Defendants of the post-term obligations of the Franchise Agreement" (id. ¶ 43); "injunctive relief and specific performance against the Livengoods of all of Defendants' obligations under the Franchise Agreements" (id. ¶ 51); and "an audit of Defendants' business books and records" (id. ¶ 53).

The Court must include the value of the injunction sought in calculating the amount in controversy.  See Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.") (citations omitted); Advance Am. Servicing of Ark., 526 F.3d at 1173 ("[T]he amount in controversy is determined by the value to the plaintiff of the right sought to be enforced.").

Novus asserts that it faces the harms of lost customer good will, the amount that would be paid by a new franchisee who would otherwise enter the market if Defendants were not operating, and damages to the entire franchise system caused by the non-compete violation.

It is difficult to attract a new franchisee when a former franchisee is improperly competing within the same area.  See, e.g., Anytime Fitness, Inc. v. Reserve Holdings, LLC, Civil File No. 08-4905 (MJD/JJK), 2008 WL 5191853, at *6 (D. Minn. Oct. 8, 2008).  Without the injunction, a new Novus franchisee would be forced to compete with the Livengoods, who know all of Novus's methods of operation and learned the business from Novus.  Novus provides evidence that it has had difficulty re-franchising Defendants' territory since the expiration of

their Franchise Agreements and that potential franchisees have informed Novus that they are aware of the Livengoods' continued operation of their competing business in the area.

Novus also provides evidence that the value of a new Novus franchisee in the area is worth $18,000 in the initial franchise fee and training fee that Novus would collect from a new franchisee in the APR; Novus would also profit from the sale of equipment, software, and a franchise identification package; and it would receive ongoing royalty fees of a minimum $350 per month for the 10-year term of each franchise agreement.  (Beveridge Decl. ¶¶ 12-13.)   Assuming Novus would collect only the minimum royalty fee of $350 per month, the total royalties for each franchise would be at least $42,000.  Therefore, the initial fees and royalties for one new franchise would be worth a minimum of $60,000, plus profit from the sale of equipment, software, and a franchise identification package.

However, it is also reasonable to estimate monthly royalties from a new franchise in the same APR to be similar to the royalties previously paid by the Livengoods, based on a certain dollar amount of sales.  Therefore, monthly royalties would average over $800 (Beveridge Decl. ¶ 3), and the harm from the

14

loss of the royalties from just one franchise would exceed $95,000, easily meeting

the amount-in-controversy requirement.  See Grow Biz Int'l, Inc. v. MNO, Inc.,

No. CIV. NO. 01-1805(DWF), 2002 WL 113849, at *2 (D. Minn. Jan. 25, 2002)

(calculating amount in controversy in suit to enforce noncompetition agreement

to equal value of new franchise in the same area, paying average franchise

royalties for ten-year franchise term of 10 years, plus the value of the initial

franchise fees).

Whether, ultimately, in this case, an injunction would influence a potential

franchisee, given that Novus's franchise areas are non-exclusive, is a fact

question that cannot be answered at this stage.  Novus can plausibly argue that

although the franchise areas are non-exclusive, only Novus has the power to

decide whether to allow another franchise to compete within an APR, and Novus

has a self-interest in only permitting competition if it would not hurt the profits

of its franchisees.  At this point in the litigation, the Court cannot say that it is a

legal certainty that Novus cannot prove that the injunction is worth the $100,000+

value of a new franchise in the APR.  See JTH Tax, Inc. v. Frashier, 624 F.3d 635,

640 (4th Cir. 2010) (concluding that it could not "say with legal certainty" that the

injunction in a franchise case was worth less than the requisite amount because

the franchisor's calculations were "at least facially plausible" in valuing its

reputation value or the loss of a franchise).

### b)   Royalties and Attorneys' Fees

The potential value of the injunction alone is sufficient to establish the

amount in controversy.  Additionally, the amount in controversy is increased by

Plaintiff's plausible claims for unpaid royalties, the cost of an audit to discover

additional unpaid royalties, and attorneys' fees provided for in the contract.

### C.   Enforceability of Post-Term Non-Compete under Kansas Law

The Livengoods alternatively claim that the Court should dismiss Counts

One, Two, and Four with prejudice because they seek to enforce a post-term non-

compete that is not enforceable under Kansas law.  Defendants assert that Kansas

courts have traditionally deemed covenants not to compete to be void as against

public policy to the extent that they restrain a person's ability to exercise his

trade or calling.  See H&R Block, Inc. v. Lovelace, 493 P.2d 205, 210-11 (Kan.

1972) ("It is readily apparent the governing rules are equitable in nature as they

must be where courts are called upon to resolve conflicts between basic

principles of law, the conflicting rules here being (1) under the common law

agreements in restraint of a person's right to exercise his trade or calling were

void as against public policy and (2) contracts of persons sui generis are to be enforced.") (citation omitted).  The non-competition covenant appearing in the franchise agreement before the Kansas Supreme Court in <u>Lovelace</u> was deemed to be, "[u]nder these narrow facts," more like an employment contract than a contract to sell or dispose of a business.  <u>Id.</u> at 212.  Therefore, strict construction against the franchisor was appropriate.  <u>Id.</u>  The court then found the unlimited territorial restriction was unjustifiable based on the local nature of the franchise; therefore, the entire covenant was invalid.  <u>Id.</u> 213.

More recently, the Kansas Supreme Court has explained: "A noncompetition covenant ancillary to an employment contract is valid and enforceable if the restraint is reasonable under the circumstances and not adverse to the public welfare."  <u>Weber v. Tillman</u>, 913 P.2d 84, 89 (Kan. 1996) (citations omitted).  The court further explained:

> The rationale for enforcing a noncompetition covenant is based on the freedom of contract.  However, it is well settled that only a legitimate business interest may be protected by a noncompetition covenant.  If the sole purpose is to avoid ordinary competition, it is unreasonable and unenforceable.  Additionally, noncompetition covenants included in employment contracts are strictly construed against the employer.

Id. (citations omitted).  Defendants conclude that the covenant is void because it serves solely to eliminate competition.

The Court's current analysis of the enforceability of the Novus covenant is undertaken in the context of a Rule 12(b)(6) motion to dismiss.  Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted.  In reviewing a motion to dismiss, the Court takes all facts alleged in the complaint to be true.  Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  Thus, although a complaint need not include detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Id. (citations omitted).

At this early stage, it is not certain that the covenant cannot be enforced. As the Kansas Supreme Court explained in Eastern Distributing Co., Inc. v. Flynn, "[w]hile the ultimate determination whether a legitimate interest subject to protection is shown may be a matter of law, the underlying facts are to be

determined by the trial court after hearing the testimony presented."  567 P.2d

1371, 1378 (Kan. 1977).  Therefore, at the motion to dismiss stage, it is impossible

for the Court to determine if this particular covenant is enforceable.

In determining whether the covenant is reasonable, Kansas courts consider

the legitimate interests of the party seeking to enforce the covenant, the burden

on the restricted party, whether the covenant injures the public welfare, and

whether the time and territorial restrictions are reasonable.  Weber, 913 P.2d at

90.

### 1.    Whether Novus Has a Legitimate Interest in the Non-Compete

Novus has asserted that it has a legitimate business purpose other than

simply avoiding ordinary competition.  As provided in the 2000 Franchise

Agreement, the covenant is necessary to permit Novus the opportunity to resell

and/or develop a new Novus business within the APR.  (2000 Franchise

Agreement ¶ 21.3.)  Plaintiff also argues that the covenant is necessary to protect

its confidential information, its methods of operation, its goodwill, its customers,

and its franchise system.  It is a "well-recognized principle that 'customer

contacts' is a legitimate interest to be protected.  . . .  Protection of this asset

against appropriation by an employee is recognized everywhere as an important

legitimate interest of the employer." <u>E. Distrib. Co.</u>, 567 P.2d at 1376.  <u>See also</u>

<u>Olin Water Servs. v. Midland Research Labs., Inc.</u>, 596 F. Supp. 412, 415 (E.D.

Ark. 1984) (finding loss of customers to be a legitimate interest to support a

covenant not to compete under Kansas law).

### 2.     Whether the Covenant Is an Undue Burden

Plaintiff argues that the covenant is not an undue burden on Defendants.

They had the right to renew their Novus franchise, but chose not to, knowing

their post-termination obligations.  It asserts that after the franchise expired, the

Livengoods could have sold their business, converted the business to a non-

competing business, or moved their business outside the area where competition

was restrained.  When the restricted party can perform other types of work or

perform the same work outside of a limited territory for a limited time, "[t]here is

no undue burden."  <u>Weber</u>, 913 P.2d at 91.  It is inappropriate for the Court to

opine on whether the covenant imposes an undue burden at this stage of the

litigation, with no evidence regarding the specifics of Defendants' business or

alternative opportunities.

### 3.    Public Interest

"Although restrictive provisions in contracts of employment must be reasonable and not such as to contravene the public welfare, the paramount public policy is that freedom to contract is not to be interfered with lightly." Weber, 913 P.2d at 89.  At this stage, the Court cannot definitively determine where the public interest lies.

### 4.    Scope of the Non-Compete

Geographic and temporal restrictions in a covenant not to compete "must be no greater than necessary to protect the employer's interests." Weber, 913 P.2d at 91.  The non-compete in this case is limited to two years and to the Livengoods' former multi-county territory.  Kansas courts have upheld similar territorial restrictions and two-year restrictions as reasonable and enforceable. See, e.g., Weber, 913 P.2d at 90-92 (upholding 2-year, 30 miles around each office, covenant); Partsmaster, Inc. v. Johnson, 475 F. Supp. 417,  417 (D. Kan. 1979) (issuing preliminary injunction enforcing 18-month, 18-Kansas-county covenant). At this stage, the Court cannot say that, as a matter of law, the covenant is overly broad in scope.  Additionally, if the Court does later determine that the non-compete is overly restrictive, it has the power to modify the scope of the

restriction.  <u>See</u> <u>E. Distrib.</u>, 567 P.2d at 1378-79 (upholding trial court's reduction of covenant's geographic restriction).  Therefore, dismissal of an entire claim on the basis of the scope of the non-compete is inappropriate at this stage.

Overall, on the pleadings, the Court cannot say that Plaintiff fails to state a claim upon which relief can be granted.  Defendants' motion to dismiss on that basis is denied.

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

1.   Defendants' Motion to Dismiss [Docket No. 8] is **DENIED**.

2.   The parties are ordered to appear for a settlement conference before the Honorable Tony N. Leung on Tuesday, February 21, 2012, at 9:00 a.m. in Courtroom 3A in the St. Paul Federal Courthouse, 316 North Robert Street, St. Paul, Minnesota 55101.

Dated:   January 8, 2012          s/ Michael J. Davis_____
                                 Michael J. Davis
                                 Chief Judge
                                 United States District Court